IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CHARLES C. CURRIER, as personal representative of the Estate of ANTHONY MICHAEL JUAREZ, deceased, and DEVONNE ESPERANZA JUAREZ, as mother and next friend of LATASHA JUAREZ, a minor,

        Plaintiffs,

v.                                                   No. CIV 97-0477 BB/JHG

TOM DORAN, in his personal capacity acting under color of state law; SHIRLEY MEDINA, in her personal capacity acting under color of state law; REGINA SENTELL, in her personal capacity acting under color of state law; MELBA GONZALES, in her personal capacity acting under color of state law; and KELLY ROBBINS, in her personal capacity acting under color of state law,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the Court for consideration of motions for summary judgment filed by Defendants Gonzales and Robbins on April 28, 1998 (Doc. 36), and by Defendants Doran, Medina, and Sentell on January 8, 1999 (Doc. 53). These motions ask the Court to dismiss Plaintiffs' case on grounds of qualified immunity. The Court previously addressed the qualified-immunity question in *Currier v. Doran*, 23 F.Supp.2d 1277, 1282 (D.N.M. 1998), with respect to Gonzales and Robbins. However, the Court subsequently issued an order withdrawing the qualified-immunity portion of that opinion. The reason for that withdrawal was the fact that counsel for Gonzales and

Robbins submitted a brief to this Court raising the qualified-immunity question, but served a brief upon opposing counsel that did not mention qualified immunity. To allow Plaintiffs a fair opportunity to brief the issue, the Court withdrew that portion of the October 21, 1998 *Currier* opinion ("*Currier I*").

Following the above proceedings, the other Defendants also filed motions for summary judgment raising qualified immunity as a defense. As noted in *Currier I*, however, no discovery has yet taken place in this case due to a stay imposed by the Court, and the motions for summary judgment are more properly addressed as motions to dismiss. All parties have now had an opportunity to brief the issue, and the Court will address the qualified-immunity question with respect to each Defendant. The Court will not repeat the facts and procedural history outlined in *Currier I*.

**Danger-Creation Theory as Clearly Established Law**

In *Currier I*, this Court held the danger-creation theory had not, as of late 1993, been developed to the point that a reasonable state employee would recognize children had a constitutional right not to be knowingly placed with an abusive natural parent. 23 F.Supp.2d at 123. This Court relied on the fact that no case had yet been decided establishing such a right. In addition, as the Court pointed out, there was dicta from two Circuits indicating that placement of a child with a parent or family member might insulate a state from constitutional liability. *Id.* Since *Currier I* was filed, however, the Court has had the benefit of argument and authority from both sides. In addition, the Tenth Circuit has issued two opinions concerning the danger-creation theory, both of which are more expansive, regarding the scope of that theory as well as the clearly-established nature of the theory, than the approach taken by this Court in *Currier I*. *See Sutton v. Utah State School for the Deaf and*

2

*Blind*, 173 F.3d 1226 (10th Cir. 1999); *Armijo v. Wagon Mound Pub. Sch.*, 159 F.3d 1253 (10th Cir. 1998).

In *Armijo*, the Tenth Circuit extensively discussed the danger-creation theory and set out a six-part test for determining whether the theory might be viable in a particular case. 159 F.3d at 1262-63. Under *Armijo* a plaintiff must show: (1) he or she was a member of a limited and specifically definable group; (2) the defendant's conduct put the plaintiff at a substantial risk of serious, immediate, and proximate harm; (3) the risk was obvious or known; (4) the defendant acted recklessly in conscious disregard of that risk; (5) such conduct, when viewed in total, is conscience-shocking; and (6) the defendant either created the danger or increased the plaintiff's vulnerability to it in some way. *Id.* Applied to the facts of this case, the *Armijo* analysis confirms the Court's determination, in *Currier I*, that Plaintiffs have alleged a viable danger-creation cause of action under the due-process clause. Plaintiffs, as specific children placed in a specific home by Defendants,[1] are members of a limited group. Also, Plaintiffs allege specific facts showing that Defendants' conduct placed them at substantial risk of serious harm, that the risk was obvious or known, that Defendants acted recklessly in disregard of that risk, and that Defendants' conduct is conscience-shocking.[2]

---

[1] At this point in the opinion, the Court will refer to Defendants collectively. The Court will discuss the facts alleged as to each individual Defendant *infra*.

[2] These allegations, which must be accepted as true for purposes of the qualified-immunity analysis, may be summarized as follows: (1) Defendants removed the children from their mother's home, knew their father was not supporting them financially, and knew he had allowed them to live in a home where they were being neglected; (2) despite this knowledge, Defendants placed the children in their father's physical custody; (3) following that placement, Defendants received information indicating the father and/or his girlfriend were physically abusing the children, but failed to investigate the allegations or to report them to the children's court, which awarded legal and physical custody to the father; (4) shortly thereafter, Defendants received more information alleging abuse of the children, and removed the children temporarily from the father's home; (5) Defendants failed to adequately investigate the allegations and returned the children to the father; (6) Less than

Finally, Plaintiffs allege Defendants created or increased the danger to which they were exposed, by knowingly or recklessly failing to prevent the children's father from obtaining legal and physical custody after first removing the children from their mother's home, and then changing the status quo by placing the children with their father. *See S.S. v. McMullen*, ___ F.3d ___, 1999 WL 512176 (8th Cir.) (transferring custody to father, knowing of high risk that sexual abuse by third party would result, created danger and concomitant duty to protect from that danger).

In addition, both *Armijo* and *Sutton* are highly relevant to the requirement that the law be clearly established at the time of the actions in question. In *Sutton* the Tenth Circuit stated that a plaintiff "need not present an identical case to show the law was clearly established" but must show only that the contours of the right were sufficiently clear that a reasonable official would understand he was violating that right. 173 F.3d at 1241. Significantly, both *Sutton* and *Armijo* involved fact situations for which there was no directly applicable precedent. In both cases, however, the Tenth Circuit held that the general outlines of the danger-creation theory were clearly established in 1995 and 1994, respectively, and therefore the state actors in these cases were not entitled to qualified immunity. *Id.*; 159 F.3d at 1262. The actions taken by the school personnel in *Armijo* occurred less than a year after most of the actions of Defendants in this case. Furthermore, *Armijo* relies on cases from other jurisdictions decided from 1990 to 1994, a time frame encompassing the 1993-1994 span involved in this case. Finally, there appear to have been no major changes in the law of danger-

---

two months later, Defendants again were notified of allegations of abuse, failed to properly investigate them, and actively discouraged the children's mother from reporting any more such allegations; and (7) shortly before Anthony was killed by his father, Defendants again received allegations of abuse, found bruises on both children, but failed to take any action to protect them or remove them from their father's home, with the result that Anthony was scalded to death and, when both children were finally removed from the home, they were both covered with bruises.

4

creation between late 1993, the time Defendants began to act, and late 1994, when the *Armijo* defendants acted, which would justify a different result in this case than in *Armijo*. Therefore, the Court will follow *Armijo* and hold there was clearly established law, at the time period relevant to this case, that state actors could not place a child in a dangerous circumstance and then fail to protect that child.

The Court's opinion in *Currier I*, in deciding there was no clearly established law in 1993 and 1994 governing Defendants' actions in this case, relied on two main factors. First, there was no case law directly on point involving a transfer of custody from one natural parent to another. Second, as noted above, there was dicta from other Circuits implying a state could not be held liable for placing a child with a parent or family member. The Court's focus therefore was narrowed to the particular circumstance of child-custody decisions involving natural parents. However, the *Armijo* and *Sutton* opinions encourage a broader focus, aimed at the danger-creation theory in general, rather than the particular factual circumstance of each case. *Cf. Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (proper application of clearly-established-right standard depends on proper determination of level of generality to use in deciding what right is involved). In addition, other Circuits have noted that, in qualified immunity cases, dicta is "particularly unhelpful" because courts will often reach a different result after an issue has been briefed, argued, and thoroughly researched. *See, e.g., Hamilton v. Cannon*, 80 F.3d 1525, 1530 (11th Cir. 1996); *see also Wilson v. Meeks,* 52 F.3d 1547, 1555 (10th Cir. 1995) (one ambiguous bit of dictum in a Ninth Circuit opinion cannot form the basis for a clearly established duty). A state employee in 1993 and 1994, then, faced with a decision concerning custody of a child and a natural parent, would have confronted a legal landscape consisting of the clearly-established principle that a child or other person could not constitutionally

be placed in harm's way and then abandoned. Conflicting with this danger-creation theory in this particular fact situation were two or three statements by Circuit courts that were clearly dicta. The Court holds that if such an employee knowingly or recklessly transferred custody of a child to an abusive parent, the employee could not reasonably believe the danger-creation theory was inapplicable, simply because the abuser was a parent.

**Allegations as to Individual Defendants**

There are five individual Defendants in this case. None of them were involved in every alleged wrongful act committed in the case. It is necessary, therefore, to examine the allegations as to each individual Defendant to determine whether they meet the requirements of the *Armijo* and *Sutton* cases.[3]

**Defendant Doran:** The allegations against Doran are as follows: he was told about allegations of physical abuse in August and September 1993, but failed to investigate these allegations even though he knew of the father's history as an irresponsible non-custodial parent. In October, shortly after legal custody was granted to the father, Doran was again told about bruises on Latasha's

---

[3]In doing so, the Court notes Defendants' argument that only actions taken prior to October 19, 1993 may be considered. According to Defendants, it is undisputed that legal and physical custody of the children was granted to their father at least by that date, and therefore they cannot be held liable for injuries inflicted on the children after October 19. *See DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 201-202 (1989) (returning child to father's custody did not impose continuing duty to protect child from father's abuse). The Court disagrees. In this case, unlike *DeShaney*, Defendants did not merely return the children to the same situation in which they were found. Instead, Defendants changed the status quo and thereby created the danger faced by the children. In such circumstances, the state does have a duty to protect the children from the harm to which they were knowingly or recklessly exposed, even after legal custody has been granted to a parent. *See S.S. v. McMullen*, *supra*, ___ F.3d at ___ (state actors have an obligation to subsequently protect an individual after they have created a danger to the individual's well-being; fact that legal custody had already been granted to child's father did not insulate defendants from liability when child was sexually abused after defendants knowingly exposed child to risk of such abuse by transferring custody to father).

6

back, but performed only a cursory investigation, believed the father's explanation for the bruises despite the prior reports of abuse, and did nothing. Shortly thereafter, in November, Doran received another report of abuse, and investigated bite marks and bruises found on both Latasha and Anthony. The children were removed from their father's custody, but were returned after Doran failed to strongly advocate against that course of action in a meeting with his department's attorney, despite his alleged belief the children would be injured again if returned to their father. In January 1994, Doran again became aware of abuse allegations raised by the children's mother, but his response was to discount the reports and attempt to discourage the mother from making any further allegations of abuse. Finally, in March, Doran was once again informed of allegations of abuse. Instead of taking action based on his past knowledge of the case and the almost-monthly instances of bruising, bites, and other indications of abuse, Doran simply referred the matter to another employee for handling. The Court holds these allegations are sufficient to state a claim under the danger-causation theory, especially at this stage of the case when no discovery has been performed. The Court cannot say Plaintiffs would be unable to recover damages from Doran under any set of facts alleged in the complaint. Therefore, the motion for summary judgment filed by Doran will be denied.

**Defendant Medina:** Medina was involved in the initial removal of the children from their mother's custody, and the initial placement of the children with their father. She reported to the children's court that the father had allowed the children to live in alarming conditions, and was not supporting the children. She then apparently had no direct involvement in the matter until January 1994, when she investigated a report of abuse. Although she discovered bruises on Anthony's buttocks, she did nothing to protect the children. Instead, she also sought to dissuade the mother from making any further accusations of abuse. This is a closer call than the case against Doran,

7

because there are fewer allegations indicating Medina had knowledge of the numerous complaints of abuse made against the father. However, the Court believes Plaintiffs have alleged sufficient facts to be allowed discovery to determine how much knowledge Medina actually had before she failed to act in January and, in fact, actively discouraged any further attempts by the mother to notify authorities of the alleged on-going abuse being perpetrated by the father. Therefore, Medina's motion for summary judgment will be denied as well.

**Defendant Sentell:** Defendant Sentell took part in two incidents involving the children. She fielded the January allegation of abuse and referred the matter to Medina for investigation. Then, in March, Doran referred another allegation of abuse to her. She investigated and discovered bruises on both children. Despite her knowledge that a similar complaint had been received only two months previously, she concluded the bruises were not the result of abuse. Again, as with Medina, this is a much closer case than the alleged wrongdoing by Doran. It is possible the most Plaintiffs can show with respect to Sentell is ordinary negligence, which is not sufficient to make out a due-process violation. Again, however, at this stage, it is not clear how much knowledge Sentell had concerning the history of the case and the number and extent of the abuse complaints against the father. Furthermore, it is not clear how much bruising she observed in March, and how apparent it should have been that the children were being abused. Therefore, the Court will deny Sentell's motion for summary judgment and allow discovery with respect to this Defendant as well.

**Defendant Gonzales:** Gonzales' only direct involvement in the case was at a meeting in November, when she concluded, on the basis of Doran's report, there was no basis for the department to retain physical custody of the children. She was allegedly aware of the bite marks on both children and of previous reports of bruises on both children. The main allegation Plaintiffs make against

8

Gonzales is with respect to her status as a supervisor. They maintain she exhibited deliberate indifference in supervising the employees who actually worked on the case. The *Sutton* opinion also involved an allegation of supervisory liability, for failure to train and failure to implement a policy protecting against sexual assault. In *Sutton*, the supervisor had actual knowledge of complaints that a particular student had been repeatedly sexually molested in the bathroom. 173 F.3d at 1240-41. The supervisor (a principal) failed to take any action to train his employees or establish a policy for action that might prevent such assaults. *Id.* Under these facts, as alleged, the Tenth Circuit determined a cause of action had been stated against the principal under a combined theory of danger-creation and supervisory liability. *Id.* In the case before the Court, it is alleged Gonzales knew of a history of abuse allegations, and that both children had bite marks on their bodies. She had direct involvement in one instance of failure to protect the children. It is not clear whether any of the subsequent allegations of abuse were brought to her attention, or whether she had any further knowledge of the case. Again, this is a close call, but the Court will allow the action against Gonzales to proceed, at least to the summary-judgment stage. Given the stay of discovery that has been imposed in this case, it would not be fair to require the Plaintiffs to assert more facts than they have been able to allege at this point.

**Defendant Robbins:** The only allegation with respect to Robbins is that she received a letter written October 20, 1993, asking for an investigation of potential abuse by the father. Such an investigation was performed by Doran, and there is no hint in the complaint of any further involvement in the case by Robbins. Unlike with the other Defendants, there is no indication of possible knowledge or involvement in a continuing series of complaints of abuse, following the placement of the children with the father. Furthermore, the allegations of the complaint establish that

the one time Robbins was informed of possible abuse, an investigation ensued (although it is not clear whose directive impelled the investigation). The complaint fails to allege any facts indicating the possibility of conduct by Robbins that might constitute a dereliction of duty, or that shock the Court's conscience. Therefore, the Court will grant her motion for summary judgment.

**O R D E R**

For the above stated reasons, the Court hereby DENIES the motion for summary judgment filed by Defendants Doran, Medina, and Sentell (Doc. 53), DENIES the motion for summary judgment filed by Defendant Gonzales (Doc. 36), and GRANTS the motion for summary judgment filed by Defendant Robbins (Doc. 36).

Dated this 19th day of August, 1999.

                                                                            **BRUCE D. BLACK**
                                                                            United States District Judge

Counsel for Plaintiffs:
William S. Dixon
Charles K. Purcell
Rodey, Dickason, Sloan, Akin & Robb, P.A.
P.O. Box 1888
Albuquerque, New Mexico 87103

Michael L. Stout
Stout & Winterbottom
215 West Sixth Street
Roswell, New Mexico 88201

Counsel for Defendants Doran, Medina, and Sentell:
Timothy V. Flynn-O'Brien
Bryan and Flynn-O'Brien
500 Copper N.W. #102
Albuquerque, New Mexico 87102

Counsel for Defendants Gonzales and Robbins:
Paula I. Forney
State of New Mexico RMD-Legal Bureau
P.O. Drawer 26110
Santa Fe, New Mexico 87502