IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CHARLES C. CURRIER, et al.,

    Plaintiffs,

vs.                                                        Civ. No. 97-477BB/WWD

TOM DORAN, et al.,

    Defendants.

## MEMORANDUM OPINION AND RECOMMENDATION

This Opinion addresses matters raised in the show cause hearing held on December 3, 1998, by the Honorable Bruce D. Black following the filing of Plaintiff's Motion to Vacate Summary Judgment and [to] Impose Sanctions (Docket # 43). Judge Black has directed me "to investigate further matters and straighten up what was filed and what was intended."[1] To develop the record more fully, I held an evidentiary hearing on September 14, 1999.

Background.

On February 20, 1998, Defendants' Robbins and Gonzales Motion for Summary Judgment (Exhibit A to Brief in Support of Plaintiffs' Motion to Vacate Summary Judgment), hereinafter referred to as "Motion A", with supporting memorandum was served on Plaintiffs by mail. Motion A and its supporting memorandum made no reference to a defense of "qualified immunity"; and neither document was filed with the Court. On April 28, 1998, a motion with the same title and expanded contents, hereinafter referred to as "Motion B", was filed with the Court

---

[1] Transcript of December 3, 1998 hearing before Hon. Bruce D. Black, at 4, lines 16-17.

along with the Response to Motion A and a Reply.  The motion package was sent to the Court Clerk with a cover letter signed by Yvonne Montoya,  Ms. Forney's legal assistant in Santa Fe.  Motion B contained a certificate of mailing signed by Ms. Forney indicating that it was mailed to opposing counsel on April 20, 1998; i.e., eight days before the filing with the Court of the Motion B "package".  There was no motion for expedited briefing and no expedited briefing had occurred.  Neither of Plaintiffs' counsel, Mr. Stout and Mr. Purcell, received the materials certified to have been mailed on April 20, 1998.

On October 21, 1998, Judge Black granted summary judgment in favor of Defendants Gonzales and Robbins; and at the hearing on Plaintiffs' Motion to Vacate Summary Judgment and Impose Sanctions ( hereinafter "Motion to Vacate") held December 3, 1998, Judge Black vacated the summary judgment and imposed sanctions.    In her response to the Motion to Vacate, Ms. Forney, after having been informed formally of what had occurred, still argued that since she had no objection to allowing Plaintiffs to brief and argue the issue of qualified immunity, and since the failure to serve Plaintiffs with the motion (Motion B) filed with the Court was due to "excusable neglect", or an "inadvertent failure", the Motion to Vacate should be denied.

At the show cause hearing before Judge Black, Defendants' counsel, Paula Forney, Esquire, attributed the sending of one version to counsel and another to the court to circumstances where she had sent the first version, Motion A, to counsel, while her legal assistant in Santa Fe, after being e-mailed the more extensive version, Exhibit B, put that version together with the Response and Reply and filed the package with the court.  Ms. Forney acknowledged that she "probably" sent the expanded version to her legal assistant in Santa Fe; and she remembers sending Motion A to Santa Fe.  In Ms. Forney's words, "they got the wrong one."

2

When asked by Judge Black why she did not agree to have the order [granting summary judgment] withdrawn, Ms. Forney stated:

> The reason I did that, Your Honor, was that the timing was pretty close, but basically what I - - - I didn't know that I could do that, because I was out of the case. But then again, I did file another motion, because I thought that was probably the cleanest way to get it raised. And that's what we're briefing now anyway. And that was my motivation in filing the second motion.(p.4, Transcript of December 3, 1998 hearing).

Other persons in Risk Management were interviewed. Other than acknowledging that there had been problems created in this case as well as in some others by Ms. Forney's working in Albuquerque while her legal assistant was in Santa Fe, no one had any information which did much to clarify the explanation given by Ms. Forney. Walter G. Lombardi, Esquire, Ms. Forney's supervisor at Risk Management, did indicate that steps had been taken to assure better communication between Ms. Forney and her legal assistant. Ms. Forney apparently files a large number of motions in her practice at Risk Management.

<u>The Evidentiary Hearing.</u>

At the hearing conducted on September 14, 1999, testimony was taken from Michael Stout, Esquire, Yvonne Montoya, Walter Lombardi, Esquire, Timothy Flynn-O'Brien, Esquire, Charles Kipps Purcell, Esquire, and Paula Forney, Esquire. In order to give full and fair consideration to the matter referred to me by Judge Black, it is necessary to recapitulate certain portions of the hearing. This will be done using foot notes for transcript reference.

*Michael Stout.*

Attorney Stout received a motion for summary judgment on behalf of Forney's clients Robbins and Gonzales with a certificate of service dated February 20, 1998, signed by Ms.

Forney. In March and April, Stout received respectively the response to the motion served by Purcell and the reply served by Forney[2]. After Stout had received Judge Black's Opinion granting summary judgment to Ms. Forney's clients, he received a motion for summary judgement from Forney with a certificate of mailing dated October 29, 1998[3]. Stout did not receive a motion for summary judgement from Forney with a certificate of mailing dated April 20, 1998.[4]

*Yvonne Montoya.*

Montoya worked for eight years, ending May 24, 1999, with Risk Management as a legal assistant, primarily for Forney.[5] When Forney was in Albuquerque and Montoya was in Santa Fe computer transmission and couriers were used for communication and document transmission between Montoya and Forney.[6] Montoya would file pleadings in Santa Fe with other attorneys signing certificates of mailing on Forney's work.[7] The two versions of Forney's motion for summary judgement were not in Montoya's pleading file.[8] Montoya thought that she had a particular file for the April 20th motion for summary judgment.[9] When asked whether a response was received to the April 20th motion for summary judgment, Montoya's answer was vague and

---

[2] Transcript of Proceedings of Hearing before Hon. William W. Deaton on September 14, 1999 at .5: lines 6-7, 14; at.6: lines 2-3.

[3] Id. at 6 lines 14-17, lines 8-9.

[4] Id. at 6 lines 20-22.

[5] Id. at 8 lines 5, and lines 13-15.

[6] Id. at 5 lines 20-23.

[7] Id. at 8 lines 24-25; Id. at 9 lines 5-6.

[8] Id. at 10 lines 16-17.

[9] Id. at 11 lines 9-12.

4

unresponsive.[10] When asked who in Risk Management was "held responsible" for filing one motion then serving another, Montoya responded as follows:

> On February 20th when the motions were prepared by Miss Forney, apparently I had them on my computer and I apparently printed both versions and served the motion and memorandum, but in preparing the packed there was confusion when the motion was fully briefed at my desk. There wasn't an original motion, so I want into my computer and printed a Motion for Summary Judgment and copied the Certificate of Mailing from the reply date so I wouldn't have to retype that and put it on Miss Forney's desk for her to sign that day she was in the office, which was the day she probably did the reply as well
>     So then I had an original motion and memorandum and original response and original reply and submitted the packet to the court for filing not realizing that two-and-a-half months earlier there were two versions, one that was intended to get filed and one that was not.[11]

Montoya believed that she had both versions of the motion for summary judgment on her computer.[12]

*Walter Lombardi.*

Lombardi is Forney's supervisor at Risk Management; however, they were at the same level until September of 1998.[13] Lombardi was made aware of the two motion situation but made no inquiry and took no remedial action after being informed of the matter by Forney.[14] To minimize the chance of a reoccurrence of such an incident, Lombardi insisted that Forney come to the office in Santa Fe more frequently.[15] The fees assessed by Judge Black were paid by the

---

[10] Id. at 12 lines 1-15.

[11] Id. at 12 line 19 through Id. at 13 line 9.

[12] Id. at 13 lines 10-16.

[13] Id. at 19 lines 15-25.

[14] Id. at 20 lines 8-25.

[15] Id. at 21 lines 12-25.

Department.[16] Lombardi did not think that Forney had utilized two motions intentionally.[17]

*Timothy Flynn-OBrien.*

Flynn-OBrien represented a co-defendant and cooperated with Forney in the case.[18] He indicated that Forney was confused as to how the qualified immunity issue had been raised.[19] He also thought that Forney expressed confusion as to her duty to her dismissed clients with respect to the vacation of Judge Black's order granting summary judgment.[20]

*Charles Kipps Purcell.*

Purcell did not receive from Forney the motion for summary judgment containing the April 20th Certificate of Mailing.[21] Purcell was told by Montoya that "they" (presumably, Ms. Forney) refused to seek the vacation of Judge Black's order granting summary judgment.[22]

*Paula Forney.*

Forney signs Certificates of Mailing in blank.[23] As of the day she filed her reply to the motion for summary judgment she was not aware that the qualified immunity issue was on the

---

[16] Id. at 22 lines 4-6.

[17] Id. at 24 lines 11-12

[18] Id. at 26 lines 13-16.

[19] Id. at 29 lines 2-4.

[20] Id. at 29 lines 8-11, P30 lines 22-23.

[21] Id. at 33 lines 13-15.

[22] Id. at 35 lines 12-20.

[23] Id. at 40 lines 11-14.

6

table.[24]  The motion which raised the issue of qualified immunity was filed inadvertently.  The April 20th motion was mailed from Santa Fe (presumably to the Court) by Montoya.[25]  That motion was not sent to opposing counsel, and the Certificate of Service is "not an accurate Certificate of Service."[26]  Forney did not talk to opposing counsel about the two motion situation or the denial of her consent to withdrawal of Judge Black's opinion.[27]

DISCUSSION.

Ms. Forney was the principal actor in creating the instant situation.  It is very difficult to put an innocent face on the apparent selective mailing of different versions of a motion, one to the Court, another to opposing counsel; Certificates of Service signed in blank; certified mailings which were not received; reliance on an unserved motion even after the different version problem had been brought to Ms. Forney's attention; her utter failure to communicate with opposing counsel effectively in a situation which cried out for such communication; and reliance on such barely plausible explanations as "I didn't know I could do that, because I was out of the case "[28] [i.e., agree to have the Order granting the Summary Judgment withdrawn] and "they got the wrong one".[29]  Additionally, in failing to correct promptly the mistake into which she had led the Court, Ms. Forney's conduct fell well below what is professionally acceptable.  Her conduct is at

---

[24] Id. at 41 lines 3-5.

[25] Id. at 43 line 4.

[26] Id. at 43 lines 6-11, 18-19.

[27] Id. at 45 lines 7-9.

[28] Transcript of December 3, 1998 hearing before Hon. Bruce D. Black, at 4, lines 16-17.

[29] Id. at line 8.

best such inexplicable obstinance and obstruction of the processes of the Court that personal sanctions should be imposed against her.

## RECOMMENDATION

I recommend that the Court impose personal sanctions against Ms. Forney.

_____
UNITED STATES MAGISTRATE JUDGE